# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HACKENSACK UNIVERSITY MEDICAL CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>YINGLIAN XIAO a/k/a Julia Xiao,<br><br>Defendant. | Civ. No. 2:17-cv-2822-KM-MAH<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Hackensack University Medical Center ("HUMC") seeks to enforce a settlement of this lawsuit against Yinglian Xiao, a/k/a Julia Xiao. HUMC seeks a declaration that the matter is settled on the terms stated in a signed term sheet. Ms. Xiao claims that the parties did not reach an enforceable settlement agreement and seeks to vacate the settlement.

## I. BACKGROUND[1]

Defendant Yinglian Xiao ("Ms. Xiao") worked for HUMC. (Def. Br. 3; Pl. Br. 2). She claims that in the beginning of March 2017, she reported unlawful activities of Frank Pipas, the Vice President of HUMC for Finance, to Robert

---

[1] Certain citations to the record are cited as follows:

    Def. Br. = Brief in Opposition to Plaintiff's Motion to Enforce a Term Sheet as a Purported Settlement Agreement (ECF No. 17)

    Pl. Br. = Brief in Support of Plaintiff's Motion to Enforce the Parties' Settlement Agreement (ECF No. 14-1)

    Term Sheet = Term Sheet for Settlement Agreement (ECF No. 14-4, ex. F)

1

Glenning, the HUMC Chief Financial Officer. (Def. Br. 3). The "circumstances quickly deteriorated" and she reported Frank Pipas's conduct to Robert Glenning again. (Def. Br. 3). Ms. Xiao alleges that, after her whistleblowing, the work computer assigned to her was monitored and audited without her knowledge. (Def. Br. 3). She was then allegedly "threatened and forced ... off duty." (Def. Br. 3). Ms. Xiao allegedly lost her compensation and benefits from HUMC. (Def. Br. 3).

HUMC alleges that Ms. Xiao "had transferred files from HUMC's system to herself by copying documents to a removable USB drive." (Pl. Br. 2). These files allegedly included thousands of rows of data—social security numbers, names, employment status, birth date, sex, hire date, and salary information—for active employees and retirees of HUMC. (Pl. Br. 2). HUMC claims that they initially demanded that Ms. Xiao return the documents. (Pl. Br. 2). When she refused, HUMC instituted this action. HUMC's complaint alleges breach of contract and conversion, as well as violations of federal and state statutes relating to the unauthorized taking of data from HUMC's computers. (Pl. Br. 2). HUMC sought a temporary restraining order ("TRO") and preliminary injunction to prevent Ms. Xiao from using the documents and to compel her to return the documents. (Pl. Br. 2). Ms. Xiao denies that she copied documents. (Def. Br. 3-4). She claims that HUMC falsely accused her in retaliation for her whistleblowing activities. (Def. Br. 3-4).

On April 25, 2017, the court entered an order to show cause with a TRO, barring Ms. Xiao from using any wrongfully taken documents. (Pl. Br. 3). On May 4, 2017, counsel and the court agreed that the TRO should remain in place while the parties discussed an amicable solution. (Pl. Br. 3).

On June 19, 2017, the parties submitted a consent order and final judgment to the court. (Def. Br. 5-6; Pl. Br. 3-4; ECF No. 12). The court entered the order and judgment, which (1) permanently restrained and enjoined Ms. Xiao from transferring, disseminating, erasing, destroying, altering, or otherwise making use of the Documents; (2) ordered Ms. Xiao to return any

copies of Documents to HUMC; and (3) ordered Ms. Xiao to furnish HUMC with a sworn affidavit that she is not in possession of any Documents and has not transferred, disseminated, or made use of the Documents. (ECF No. 13). The court retained jurisdiction over the matter for purposes of "construction, modification, and enforcement of this Consent Order, including the terms of the parties' settlement agreement." (ECF No. 13).

Also on June 19, 2017, HUMC and Ms. Xiao's then-counsel executed a "Term Sheet." (Def. Br. 7; Pl. Br. 3-4). Ms. Xiao now denies that this term sheet constituted a settlement agreement, stating that the parties merely agreed to continue to negotiate a settlement agreement. (Def. Br. 7; Pl. Br. 3-4). The term sheet, which covers three pages, states the following:

### TERM SHEET FOR SETTLEMENT AGREEMENT

Plaintiff Hackensack University Medical Center ("HUMC") filed a Verified Complaint against Defendant Yinglian Xiao, a/k/a Y. Julia Xiao ("Ms. Xiao") in the United States District Court for the District of New Jersey, bearing the Docket No. 2:17-02822-KM-MAH (the "Litigation"). The parties have agreed to the following terms to settle the Litigation, as well as any other claims or cross-claims relating to Ms. Xiao's employment at HUMC, as follows:

1. The term "Documents" shall include all documents listed in the DLP report attached as Exhibit 1 to the Declaration of Thomas Flynn [ECF No. 1-2], as well as any confidential documents or data (including in hard copy or electronic form) originating from HUMC's computer systems, including, but not limited to any documents containing trade secrets; proprietary or sensitive commercial information; or documents containing personal information about employees, such as, by way of example, social security numbers, addresses, or any other personal identifying information and shall further include all data or information contained in the documents listed in the DLP report or other confidential documents.

2. References to "Ms. Xiao" shall include her, as well as any agents, employees, or representatives acting on her behalf.

3. References to "Device" shall include any USB drive, flash drive, or any other type of external data storage device in whatever form.

4. The Parties have agreed to a consent order permanently restraining and enjoining Ms. Xiao from transferring, disseminating, erasing, destroying, altering, or otherwise making use of the Documents.

5. Ms. Xiao shall return any and all copies of the Documents in her possession, including any Devices containing the Documents or any copies of the Documents, within three (3) days of the date of the Court's entry of the Consent Order.

6. Ms. Xiao agrees to furnish to HUMC an affidavit stating that (a) she is not in possession of any of the Documents; (b) she has not, to date, transferred, disseminated, or otherwise made use of any of the Documents; and (c) she has not copied or otherwise transferred any Device containing the Documents or any portion thereof. This statement will be furnished to HUMC within five (5) days of the Court's entry of the Consent Order.

7. Ms. Xiao's employment at HUMC will be terminated effective as of the effective Date of the Settlement Agreement.

8. The Agreement will contain a mutual non-disparagement clause (including Pippas and Coleman).

9. HUMC shall provide Ms. Xiao with a neutral reference that includes only dates of employment and job title. HUMC shall cause its Human Resources, Job references, and employment verification systems to identify that Ms. Xiao resigned her employment as of the effective Date of the Settlement Agreement.

10. The parties will mutually release each other from any and all claims arising before the date of the execution of the final settlement agreement, including those asserted in the Litigation and any potential employment claims alleged by Ms. Xiao.

11. If Ms. Xiao is found to be in possession of any of the Documents or a Device containing any of the Documents, to have misrepresented any statement in her sworn statement, or if she violates the Consent Order or otherwise breaches the settlement agreement, HUMC shall be entitled to liquidated damages in the amount of $20,000, plus attorneys' fees and costs of suit, as well

as any penalties or damages ordered by the Court upon a finding of contempt.

    12. The Consent Order shall be otherwise enforceable before the final execution of any settlement agreement.

    13. HUMC will take no position on an application of Ms. Xiao to seal the docket. However, HUMC shall not be prohibited from disclosing information as required by law, including, but not limited to, any required disclosures to employees or former employees whose information was included in the Documents.

    14. HUMC shall prepare the initial draft of the settlement agreement.

    15. The Court shall retain jurisdiction to interpret, modify, or enforce the Consent Order, as well as the terms of the settlement agreement.

(Term Sheet). The term sheet was signed by HUMC's lawyer and Ms. Xiao's then-lawyer. (Term Sheet). On June 23, 2017, Ms. Xiao executed a sworn affidavit that she was not in possession of any relevant data or devices containing relevant data. (Def. Br. 6; Pl. Br. 4).

HUMC then drafted a twelve-page formal settlement document, (ECF No. 14-7, ex. L), and sent it to Ms. Xiao on June 28, 2017. (Def Br. 8; Pl. Br. 4). Sometime after that, Ms. Xiao terminated her relationship with her counsel and started representing herself. (Def. Br. 5). Ms. Xiao did not sign the newer, twelve-page settlement agreement.

## II. LEGAL STANDARD

### A. Settlement Enforcement

A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *See Hobbs & Co. v. American Inv'rs Mgmt., Inc.*, 576 F.2d 29, 33 (3d Cir. 1978); *Leonard v. Univ. of Delaware*, 204 F. Supp. 2d 784, 786 (D. Del. 2002). Motions for enforcement of settlement agreements resemble motions for summary judgment. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991). Therefore, the court must employ a similar standard of review. *See id.* The court must treat all the non-movant's assertions as true, and "when these assertions conflict with

5

those of the movant, the former must receive the benefit of the doubt." *Id.* at 1032. Accordingly, "[c]ourts should not summarily enforce purported settlement agreements, in the absence of an evidentiary hearing, where material facts concerning the existence or terms of an agreement to settle are in dispute." *The Intellisource Grp., Inc. v. Williams*, No. C.A. 98-57-SLR, 1999 WL 615114, at *10 (D. Del. Aug. 11, 1999).

### B. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654,

657 (3d Cir. 1990); see also *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### III. DISCUSSION

This court must determine whether the term sheet signed by HUMC's counsel and Ms. Xiao's former counsel goes beyond mere negotiations to the level of becoming binding and enforceable on the parties. State law (here, the law of New Jersey) governs the construction and enforcement of settlement agreements in federal court. *Langella v. Anderson*, 734 F. Supp. 185, 191-92 (D.N.J. 1990). "[A]n agreement to settle a lawsuit is a contract which, like all other contracts, may be freely entered into, and which a court, absent a demonstration of 'fraud or other compelling circumstance' shall honor and enforce as it does other contracts." *Pascarella v. Bruck*, 462 A.2d 186, 190 (N.J. Super. Ct. App. Div. 1983) (quoting *Honeywell v. Bubb*, 325 A.2d 832, 835 (N.J. Super. Ct. App. Div. 1974)); see also *Cooper-Jarrett, Inc. v. Cent. Transp., Inc.*, 726 F.2d 93, 96 (3d Cir. 1984) ("'An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, an even in the absence of a writing.' ... That is the settlement agreement itself is a contract, separate and independent from the dispute giving rise to the lawsuit which is settled." (citing *Green v. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970))).

In New Jersey, a contract arises from the manifestation of the parties to engage in an offer and acceptance of sufficiently definite essential terms.

7

*Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (citations omitted). To be enforceable, a contract must also be accompanied by consideration. *Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996); *see also MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J. 2008) ("To prove the existence of an express contract, [the party] must set forth the elements of offer, acceptance and consideration.").

Parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document. *See Excelsior*, 975 F. Supp. at 349; *Berg Agency v. Sleepworld-Willingboro, Inc.*, 346 A.2d 419, 422 (N.J. Super. Ct. App. Div. 1975). "[I]f the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed." *Excelsior*, 975 F. Supp. at 349 (citation omitted). If the parties agree upon the essential terms of a settlement, leaving the details to be "fleshed out" in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing. *Lahue v. Pio Costa*, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993) (citing *Bistricer v. Bistricer*, 555 A.2d 45, 46 (N.J. Super. Ct. Ch. Div. 1987)); *Hagrish v. Olson*, 603 A.2d 108, 138 (N.J. Super. Ct. App. Div. 1992) ("'So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound.'" (quoting *Berg Agency v. Sleepworld-Willingboro, Inc.*, 346 A.2d 419, 424 (N.J. Super. Ct. App. Div. 1975))).

The party seeking to enforce the agreement has the initial burden of establishing that a contract of settlement was entered into. *Amatuzzo v. Kozmiuk*, 703 A.2d 9, 11-12 (N.J. Super. Ct. App. Div. 1997). Once, however, "a contract of settlement is actually held to exist ... the party seeking to vacate the settlement must show compelling circumstances." *Id.*; *see Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990) ("In general, settlement agreements will be honored

8

absent a demonstration of fraud or other compelling circumstances.... Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated." (internal quotations omitted)).

In sum, I will determine whether the term sheet signed by the parties is a contract—i.e., whether there was **(A)** an offer and acceptance with essential terms complete; and **(B)** consideration. I will then determine **(C)** whether the contract should be invalidated. To be clear, the dispute is whether the term sheet constitutes a contract. HUMC does not seek to enforce the twelve-page formal settlement agreement. (Def. Br. 5).

### A. Offer and Acceptance, Essential Terms

HUMC and Ms. Xiao engaged in a process of offer and acceptance, and the term sheet contained the essential terms to make a contract. The parties agree that HUMC drafted the term sheet and that "Ms. Xiao's former counsel and HUMC's counsel executed a term sheet." (Def. Br. 7); see also (Pl. Br. 3). Ms. Xiao makes no showing that her former counsel lacked the authority to sign the term sheet. Thus there was an offer and acceptance.

The term sheet includes the essential terms to make a contract. Ms. Xiao demurs; the term sheet, she says, "did not include terms regarding settlement agreement confidentiality and remedies for Ms. Xiao's damages as a result of HUMC's actions." (Def. Br. 13). Such terms may be desirable, but are not essential to the formation of a contract. Some paperwork remained, but the essentials of an agreement, *i.e.*, an exchange of undertakings or promises, are present. The term sheet states, for example, that each party will sign a non-disparagement clause. (Term Sheet ¶ 8). The term sheet also provides that "[t]he parties will mutually release each other from any and all claims arising before the date of the execution of the final settlement agreement." (Term Sheet ¶ 10). Thus Ms. Xiao *agreed* to release HUMC from liability for any causes of action she may have had; in exchange, HUMC *agreed* to settle its lawsuit against Ms. Xiao and refrain from disparaging her.

9

### B. Consideration

The agreement reflected in the term sheet is supported by consideration. "No contract is enforceable, of course, without the flow of consideration—both sides must 'get something' out of the exchange." *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1171-72 (N.J. 1983) (citations omitted). "Basic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise." *Martindale v. Sandvik*, 800 A.2d 872, 878 (N.J. 2002). Consideration "is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Id.* (citing Restatement (Second) of Contracts § 71 (1981)); *see also Sipko v. Koger, Inc.*, 70 A.3d 512, 521-22 (N.J. 2013) (invalidating stock transfers based on lack of required consideration).

In bilateral contracts or agreements, such as the purported agreement in this case, where the parties make mutual promises to do some future act or acts, "the consideration of the promise of one party is a promise on the part of the other." *Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996) (citing *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 651 (N.J. 1956)); *see also Bowles v. New York Liberty*, No. 11-cv-3529, 2014 WL 7148916, at *2 (D.N.J. Dec. 15, 2014).

HUMC promised to sign a non-disparagement clause; provide Ms. Xiao with a neutral reference; release her from all claims arising from before the execution of the final settlement agreement; and take no position on an application of Ms. Xiao to seal the docket. (Term Sheet ¶¶ 8-10, 13). Ms. Xiao agreed to refrain from "transferring, disseminating, erasing, destroying, altering, or otherwise making use of the Documents"; return any and all copies of the Documents in her possession; furnish an affidavit that she is not in possession of the Documents and has not transferred or distributed the Documents; sign a non-disparagement clause; end her employment with HUMC; release HUMC from all claims arising from before the settlement

agreement; and pay liquidated damages, costs, and other penalties or damages if she breaches the contract. (Term Sheet ¶¶ 4-11). The parties jointly agreed to, and did, submit a consent order and judgment, which the court signed. (ECF nos. 12, 13)

This agreement is thus supported by consideration. The parties made mutual promises to each other, agreeing to perform future actions or forgo actions in the future.

### C. Grounds to Invalidate Settlement

In this case, a settlement agreement exists—i.e., HUMC has established offer, acceptance, and consideration. The burden thus shifts to Ms. Xiao, the party seeking to vacate the settlement. *See Amatuzzo v. Kozmiuk*, 703 A.2d 9, 11-12 (N.J. Super. Ct. App. Div. 1997); *see also Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). Ms. Xiao makes two arguments: **(i)** HUMC materially altered the term-sheet agreement in drafting the later, twelve-page formal settlement agreement; and **(ii)** there was no "meeting of the minds"—i.e., she did not intend to be bound by the term sheet.

#### i. Material Alterations in the Documents

Ms. Xiao argues that the parties did not reach a settlement agreement because there are material differences between the term sheet and the twelve-page formal settlement agreement (which she never signed). For instance, the second document includes a confidentiality agreement and states that Ms. Xiao will not be eligible for re-hire; those provisions were not part of the term sheet. (ECF No. 14-7, ex. L; Term Sheet).[2]

---

[2] Ms. Xiao also claims that the second document adds a mutual release of all claims. (Def. Br. 19-25). In fact, the term sheet contains an agreement that the parties will mutually release each other: "The parties will mutually release each other from any and all claims arising before the date of the execution of the final settlement agreement, including those asserted in the Litigation and any potential employment claims alleged by Ms. Xiao." (Term Sheet ¶ 10).

She also argues that the second document changes provisions in a material way. For instance, the mutual release provision in the second document lists several specific laws under which Ms. Xiao may not assert causes of action. (ECF No. 14-7, ex.

11

However, HUMC is not claiming that the second, twelve-page document is binding or seeking to enforce it. HUMC seeks to enforce the term sheet, which was signed by Ms. Xiao's then-counsel. That agreement, as embodied in the term sheet, is enforceable. Any material changes to the term-sheet agreement that may have appeared in the never-executed second document are irrelevant.

### ii. "Meeting of the minds"

Ms. Xiao argues that there was no "meeting of the minds." Essentially, she claims that the parties engaged in preliminary negotiations and did not intend themselves to be bound by the term sheet. Ms. Xiao's argument is unavailing, however, because the parties mutually manifested an intent to be bound:

> The law on this issue is clear. "Under New Jersey law, settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients." See [*McDonnell v. Engine Distribs.*, No. 3-cv-1999, 2007 WL 2814628, at *8 (D.N.J. Sept. 24, 2007)] (citing *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005)). An attorney is presumed to possess authority to act on behalf of his client. *Id.* The party asserting the lack of authority "must sustain 'a heavy burden to establish that [the] attorney acted without any kind of authority ....*" Jennings*, 885 A.2d at 490 (quoting *Sur. Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 583 (8th Cir. 1984)).

*Ezekwo v. Quirk*, No. 15-cv-3167, 2017 WL 6046859, at *3 (D.N.J. Nov. 17, 2017), *report and recommendation adopted*, 2017 WL 6029604 (D.N.J. Dec. 5, 2017).

---

L). The term sheet uses more general language ("any and all claims . . . including . . ."). The difference is not dramatic, but in any event the argument is unavailing. Parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more detailed formal document. *Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996); *Berg Agency v. Sleepworld-Willingboro, Inc.*, 346 A.2d 419, 424 (N.J. Super. Ct. App. Div. 1975).

12

In this case, Ms. Xiao was represented by attorneys in the settlement negotiations, and HUMC's lawyers participated as well. The term sheet states the following:

> Plaintiff Hackensack University Medical center ("HUMC") filed a Verified Complaint against Defendant Yinglian Xiao, a/k/a Y. Julia Xiao ("Ms. Xiao") in the United States District Court for the District of New Jersey, bearing the Docket No. 2:17-02822-KM-MAH (the "Litigation"). *The parties have agreed to the following terms to settle the Litigation, as well as any other claims or cross-claims relating to Ms. Xiao's employment at HUMC,* as follows:

(Term Sheet (emphasis added)). The term sheet was signed by both parties' lawyers. This shows a meeting of the minds. Undisputed facts show a signed agreement, not mere preliminary negotiations.

Ms. Xiao claims that she nevertheless did not want to be bound by the term sheet. It is hornbook law, however, that her unexpressed, subjective intent is not relevant to the contract's validity. "The intent that is relevant in determining whether there has been a meeting of the minds is the 'objective intent' that the contracting party 'outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested.'" *United Supply Co. v. Crivaro*, No. 17-cv-3256, 2018 WL 1605152, at *4 (D.N.J. Apr. 3, 2018) (citing *Hagrish v. Olson*, 603 A.2d 108, 110 (N.J. Super. Ct. App. Div. 1992)). Ms. Xiao's had her then-attorney sign a term sheet with all essential terms, drafted and signed by opposing counsel. It is proper, and indeed ordinary, for a party to act through an attorney in litigation-related matters. Thus, Ms. Xiao, through her agent, outwardly manifested an intent to be bound and HUMC reasonably understood it as such. *Cf. Hagrish*, 603 A.2d at 110 (finding that there was a "meeting of the minds" despite a party's "undisclosed intention" to violate the terms agreed upon).[3]

---

3     Ms. Xiao makes a more targeted argument that the liquidated damages provision of the term sheet is unenforceable. To determine whether a liquidated damages clause is valid and enforceable, New Jersey courts consider (a) whether "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach" and (b) whether "the harm that is caused by the breach is one

13

## IV. CONCLUSION

For the foregoing reasons, HUMC's motion (ECF no. 14) is granted. The term sheet is declared to be an enforceable settlement agreement, and the action is deemed to remain settled on the conditions stated in the term sheet.

Dated: May 7, 2018

                                                               */s/ Kevin McNulty*
                                                               **KEVIN MCNULTY**
                                                               **United States District Judge**

---

that is incapable or very difficult of accurate estimation." *MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493, 498-99 (N.J. 1999) (citing Restatement (First) of Contracts § 339 (1932)). Because HUMC makes no response to the argument and does not seem to be seeking liquidated damages at present, I do not reach this issue.

14